

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
**ATTORNEY GENERAL**

Honorable Dean Gauldin
District Attorney
Dallas County
Dallas, Texas

Dear Sir:

Opinion No. O-7356

Re: Effect of Section 15A(4)(a)
of Article 666, Vernon's
Annotated Penal Code, upon the
issuance of liquor permits to
Continental Distilling Corpora-
tion and Continental Distilling
Sales Company.

We have received your request for an opinion of this
department, which reads as follows:

"The Texas Liquor Control Board has recently
issued a 'non-resident seller's permit' to the
Continental Distilling Corporation and has also
issued a 'wholesaler's permit' to the Continental
Distilling Sales Company. Each of these corpora-
tions has announced its intention of operating
in this State by exercising the privileges which
are conferred upon the holders of such permits by
the Texas Liquor Control Act, and, upon the basis
of the facts which are hereinafter set forth, I
respectfully request your opinion upon the related
questions of whether these permits have been wrong-
fully issued and whether these corporations are
authorized to operate under such permits.

"Both of these companies are foreign corpora-
tions whose stock is wholly owned by Publicker
Industries, Inc., which is also a foreign corpora-
tion. Seemingly, Publicker Industries, Inc. owned
the stock in these companies on and prior to Janu-
ary 1, 1941.

Hon. Dean Gauldin, page 2

"Since 1934 the Continental Distilling Sales Company has been licensed to transact business in this State, and from 1943 until a short time ago this Company held a 'non-resident seller's permit' under the Texas Liquor Control Act. Contrariwise, however, the Continental Distilling Corporation has never been licensed to transact business in this State and this organization had held no permit under the Texas Liquor Control Act prior to June 29, 1946, the date upon which it was issued the 'non-resident seller's permit' which it now holds. The 'wholesaler's permit' which is now held by the Continental Distilling Sales Company was also issued on June 29, 1946, and contemporaneously with the issuance of such permit, this Company surrendered the 'non-resident seller's permit' which it had theretofore held.

"I am familiar with your Opinion No. O-7150A in which you ruled that Section 15½A(4)(a) of Article 666, Vernon's Annotated Penal Code, is no barrier to the issuance of the permits which these companies now hold. However, I note that the facts which were submitted to you as a predicate for this Opinion do not expressly reflect that the Continental Distilling Corporation has never been authorized to engage in business in this State and that heretofore it has never held any character of liquor permit under the laws of this State. Consequently, the request for your valued opinion which is made herein is in essence an inquiry as to whether the ruling which you made in your Opinion No. O-7150A is in any way altered or affected by these additional facts with respect to the Continental Distilling Corporation."

Your letter and the letter of Honorable Bert Ford upon which our Opinion No. O-7150A was based both inquire as to the effect of Section 15½A(4)(a) of Article 666, Vernon's Annotated Penal Code, upon the issuance of the liquor permits here in question. In view of this and in view of the conclusions which we shall hereinafter set forth, we deem it unnecessary to determine whether the issuance of the permits in question might be precluded by other portions of the Texas Liquor Control Act, and this opinion is limited to a consideration of the effects of Section 15½A(4)(a) upon the issuance of such permits. This statute reads as follows:

Hon. Dean Gauldin, page 3

"It shall be unlawful for any person holding a Non-resident Seller's Permit, or for any officer, director, agent or employee thereof, or for any affiliate, whether corporate or by management, direction or control to: 'Hold or have an interest in the permit, business, assets or corporate stock of any person authorized to import liquor into this state, for the purpose of resale; provided that such restrictions shall not be applicable to any such interest acquired on or before January 1, 1941.'"

Since the stock in both of the companies in question is wholly owned by Publicker Industries, Inc., it is obvious that these companies are affiliated (People v. Marcus, 185 N. E. 97 (N.Y.); 3 Words and Phrases, pp. 655-659) and, hence, that the holder of the non-resident seller's permit in question--Continental Distilling Corporation--possesses an interest in the permit, business, assets or corporate stock of a person authorized to import liquor into this state for the purpose of resale, to-wit, the Continental Distilling Sales Company. This is, of course, the very situation which is prohibited by the fore part of the above quoted statute, and such situation must be deemed unlawful unless it falls within the proviso which is contained in the latter portion of the statute.

Under this proviso, a community of interest between a non-resident seller and a wholesaler is not prohibited if "such interest" was acquired on or before January 1, 1941. For purposes of this opinion, we shall not pass upon the constitutionality of a proviso of this character. Rather, we shall assume that such proviso is constitutional and shall confine our inquiry to the question of whether or not the relationship which exists between the companies in question is comprehended by such proviso.

When analyzed solely with respect to its grammatical structure, Section 15½A(4)(a) first prohibits a non-resident seller from holding an interest in any person authorized to import liquor into this state for the purpose of resale, or, stated differently, from holding an interest in a wholesaler. Next, the statute provides that this prohibition shall not apply when "such interest" was acquired on or before January 1, 1941. It is obvious that the phrase "such interest" contained in the proviso to the statute refers back and relates to the type of interest which is prohibited by the fore part of the statute, i. e., to an interest in a wholesaler, and that the literal wording of the statute provides in effect that a non-resident seller may not hold an interest in a wholesaler, unless such non-resident seller held an interest in the wholesaler on or before January 1, 1941.

Hon. Dean Gauldin,  page 4

Consequently, under the plain language of the statute, the non-resident seller in question, Continental Distilling Corporation, is not privileged to hold an interest in a wholesaler unless it held such interest on or before January 1, 1941, and, under the facts which you have submitted, it is unlawful for the Continental Distilling Corporation to hold a non-resident seller's permit, since the non-resident seller-wholesaler relationship which now exists between these two companies was formed on June 29, 1946, and did not exist on or before January 1, 1941. Stated differently, the Continental Distilling Corporation is now privileged to hold an interest in a wholesaler only if it held such interest on or before January 1, 1941, and since the Continental Distilling Sales Company was not a liquor wholesaler on or before this date, the statute in question prohibits the present formation of a non-resident seller-wholesaler relationship between these organizations.

This conclusion is fortified by a consideration of the entire tenor of the Texas Liquor Control Act and by an appreciation of the legislative purpose which gave rise to the enactment of Section 15½A(4)(a). Prior to the adoption of prohibition, it is a matter of history that practically all of the liquor retailing and wholesaling establishments in this state were owned and operated by out of state brewers and distillers. For a discussion of the existence and effects of this situation, see Volumes I and II of "The Breweries in Texas Politics" (1915). Doubtless as a result of this situation, all liquor legislation in Texas subsequent to repeal has evidenced a clear legislative intent to separate the various levels of the liquor industry in order to prevent their interrelationship. Art. 1, Sec. 2 of the Texas Liquor Control Act provides that "This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose." (emphasis ours) Thus, the Texas Liquor Control Act contains provisions which prohibit (a) a person holding a package store permit, or owning an interest in a package store, to have any interest in a wine and beer retailer's permit, or beer retailer's license, (b) any person to have an interest in more than five (5) package stores or package store permits, (c) that it shall even be unlawful for any person who owns or has an interest in the business of a distiller, brewer, rectifier, wholesaler, winery, or wine bottler to own or have an interest in the business, premises, equipment or fixtures of any retailer; to lend financial aid to a retailer; to even sell merchandise on consignment to a retailer; to give, rent, lend or sell equipment to any retailer. Art. 666-17, Vernon's Annotated Penal Code. In other words, the whole tenor of the Texas Liquor

Hon. Dean Gauldin, page 5

Control Act, insofar as it pertains to the holder of various types of permits, is to place each permit holder in a position of absolute independence from any outside influence. The Legislature having determined that the welfare of the State requires that all such holders be absolutely independent, it is required that we liberally construe the Act to accomplish that purpose.

A fortiori until 1943, the Texas Liquor Control Act covered only the levels of wholesaling and retailing and contained no provisions with respect to distillers. Consequently, until that time the segregative provisions of the Act were directed solely at retailers and wholesalers and in no way affected distillers. However, in 1943, through the passage of Acts 48th Leg., p. 509, ch. 325, sec. 14, now codified as Article 666-15½, the Legislature for the first time attempted to exercise control over distillers. Throughout this statute is evidenced a clear intent to achieve the same separation of distillers and the other levels of the industry as had already been attained with respect to retailers and wholesalers. Thus, in a portion of this statute, Article 666-15½B, the Legislature provided for the licensing of "Manufacturer's Agents" to authorize such agents to represent distillers, but at the same time the Legislature expressly provided that such an agent could not also be an agent of a wholesaler. Conversely, at the same time the Legislature re-wrote the provisions of the Act pertaining to agents of wholesalers and expressly prohibited such agents from obtaining a permit as a "Manufacturer's Agent." (Article 666-15(9)(b).

In the statute here in question, Article 666-15½A(4)(a) one finds an evidence of this same intention in the provisions which prohibit any relationship between a distiller holding a non-resident seller's permit and a wholesaler. Moreover, the proviso to this statute can only be viewed as a recognition by the Legislature that the distiller-wholesaler relationships which had theretofore been legally created should not--and perhaps could not under our Constitution--be disturbed, while the creation of future relationships of this character should be prohibited. Likewise, as was said in our Opinion No. O-7150A, the selections in the proviso of the date of January 1, 1941, rather than the effective date of the statute, doubtless resulted from a legislative desire to recognize only those previously existing relationships which had been formed in good faith and to exclude such relationships as might have been created in anticipation of the passage of the statute with the intent to circumvent its provisions.

Hon. Dean Gauldin,   page 6

Consequently, whether the statute is construed according to its literal language or whether it is construed in light of its history and purpose, the crux of an exemption from its provisions is the existence on or before January 1, 1941, of a relationship between a _distiller_ and a _wholesaler_. Absent such relationship on such date, the proviso to the statute is ineffective, and the ban of the statute is fully operative.

The use of a hypothetical situation which is akin to the situation here in issue may perhaps serve to illustrate this point. If, for example, two wholesale groceries were affiliated prior to January 1, 1941, and if at the present time one of these concerns desire to obtain a liquor wholesaler permit while the other desires to metamorphose itself into a distiller, it cannot be thought that the proviso to Section 15½A(4)(a) would authorize such change. In such a situation there would have been "affiliation" prior to 1941, but this affiliation would not conform to the terms of the statute because neither of such concerns was then affiliated with a "person authorized to import liquor into this State for purposes of resale" and such a situation would not fall within the purpose of the proviso because it would not present a distiller-wholesaler relationship extent prior to 1941, and, hence, would not be the type of relationship which the Legislature chose to leave undisturbed. Rather, such a situation would be merely an attempt, at the present time, to form a distiller-wholesaler relationship in direct contravention of the terms of Section 15½A(4)(a).

Similarly, in the situation under discussion, the pre-1941 relationship between the Continental Distilling Corporation and the Continental Distilling Sales Company meets neither the language nor the purpose of the proviso since such relationship was not one between a distiller and a wholesaler.

In our Opinion No. O-7150A we focused our attention upon the fact that the two companies in question were affiliated on and before January 1, 1941, but we failed to perceive that this affiliation was between the Sales Company, which was not then a wholesaler, and the Distilling Corporation, which was then not even authorized to transact business in Texas and which held no character of liquor permit in this State, rather than between a distiller and a wholesaler which were doing business in Texas and which were then authorized to transact such business in this State. The statement of facts contained in your opinion request makes plain our error in this respect, and to the extent that Opinion No. O-7150A is in conflict with the conclusions herein expressed, said Opinion is hereby overruled.

Hon. Dean Gouldin,    page 7

Consequently, you are respectfully advised that the holding of a non-resident seller's permit by the Continental Distilling Corporation at the same time that a wholesaler's permit is held by the Continental Distilling Sales Company is unlawful and is expressly prohibited by the terms of Section 15½A(4)(a), Vernon's Annotated Penal Code. You are further advised that the non-resident seller's permit in question was wrongfully issued to the Continental Distilling Corporation, and that said Corporation should not be permitted to operate under such permit.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By _____
Richard H. Cocke
Assistant

RHC:LJ

APPROVED AUG 23, 1946

(Acting) _____
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY CHAIRMAN